FIELD v. BROWN.

4-7188                                    176 S. W. 2d 155

Opinion delivered December 13, 1943.

*Donald S. Martz* and *Sam W. Wassell,* for appellant.

*Ernest Briner,* for appellee.

HOLT, J.   June 3, 1942, appellant filed suit against appellee to cancel a deed dated April 9, 1942, issued to appellee by the State Land Commissioner, conveying the land involved here for a consideration of $193, which was paid to the State by appellee. Appellant alleged that he was the owner of the land by virtue of a warranty deed from S. L. Shepherd dated March 15, 1940, and that Shepherd had obtained title by virtue of a redemption deed issued to him by the State Land Commissioner February 28, 1940.

Appellee answered denying every material allegation in the complaint and alleged that the deed which S. L. Shepherd obtained from the State was void, for the reason that certain checks, which were given in payment to the State Land Commissioner for the deed to Shepherd, were worthless and never paid. The cause was submitted on a stipulation as to the material facts and there was a finding and decree in favor of appellee, Brown. This appeal followed.

The stipulated facts were: "On February 28, 1940, S. L. Shepherd applied to Land Commissioner for redemption of lands in this suit; that he was accompanied to State Capitol by Ben J. Field; that Shepherd went in alone to Land Office and ascertained amount necessary to redeem, namely, $70.30; that Shepherd then came out and advised Ben J. Field of that fact, whereupon Field gave Shepherd $70.30 in cash with which to redeem; that Shepherd immediately returned into Land Office, gave his personal check for $70.30, and the Land Commissioner issued to Shepherd the redemption deed No. 29472, attached as Exhibit "A"; redemption deed recorded Saline county, March 13, 1940, book 33, p. 169; that said check was deposited by Land Commissioner and bank returned same unpaid, marked "insufficient funds"; that Shepherd, upon being notified thereof, presented to Land Commissioner a check signed by Amer-

ican Supply Company, Little Rock, in amount of $70, and paid 30 cents in cash; that said check was also refused payment by bank because "unable to locate such account"; that, thereupon, Land Commissioner issued cancellation certificate, (dated May 16, 1940) copy attached as Exhibit "B"; original attached to book 33 at p. 169, Saline county, where redemption deed No. 29472 appears of record; that, in giving the two said checks to Land Commissioner, Shepherd did so without the knowledge of Ben J. Field; that neither check has been paid and the money or amount required to redeem has not been paid to Land Commissioner or State Treasurer by Shepherd or Field; that Shepherd, prior to March 15, 1940, acquired deeds to the property involved from the original owners, namely, Dr. M. M. Blakely, Mrs. M. Z. Martin, and J. A. Megogney; copies of deeds attached as Exhibits "C," "D," and "E," respectively; that on March 15, 1940, Shepherd and wife conveyed by warranty deed to Ben J. Field the lands involved herein; copy attached as Exhibit "F," and appellant (Field) immediately went into possession; that, on April 8, 1942, appellee, Earl Brown, and Cecil E. Brown, his wife, purchased said lands from Land Commissioner for $193, copy of Land Commissioner's deed attached as Exhibit "G"; that the northeast quarter, southeast quarter, southwest quarter, southeast quarter of said land forfeited for taxes of 1932 and confirmed May 18, 1936; that the southeast quarter, southeast quarter forfeited for taxes of 1933 and confirmed June 22, 1939; that, in acquiring said lands from Land Commissioner and from the original owners, Shepherd was acting as agent of Ben J. Field, but that Field, until immediately prior to institution of this suit, had no knowledge of fraud in connection with the acquisition of redemption deed from Land Commissioner by Shepherd; that appellant (Field) tendered in open court the $70 which Shepherd had failed to pay at time of delivery of deed by Land Commissioner; that Ben J. Field has paid the 1940 taxes on the lands involved, in the amount of $9.99, and the 1941 taxes thereon in the amount of $9.72."

On the facts presented, was the State's redemption deed to Shepherd void and subject to cancellation by the State Land Commissioner because of failure to pay the amount required to redeem?

Section 8672 of Pope's Digest provides that where land has been forfeited and sold to the State for unpaid taxes, it "may, until disposed of by the State, be redeemed by the person owning the same at the time of forfeiture, or by his heirs or assigns, in the manner provided by §§ 8673-5, inc." The latter sections require that the redemption money be paid to the State Treasurer, and not to the State Land Commissioner, and apply where the State has not, by suit, confirmed its title to tax forfeited lands.

The legislature, by Act 119 of the Acts of 1935, provided for the confirmation of its title, to tax forfeited land, and in § 10 of the act (now § 8720, Pope's Digest) provided that after confirmation of the State's title, redemption might be made by paying the amount necessary to redeem "direct to the State Land Commissioner." The State Land Commissioner was authorized to set up a special account for the "proceeds of redemption or sale" of land. Necessarily, if such account is to be set up by the Commissioner, funds must be retained by him, for the Commissioner has no authority with respect to accounts in the Treasurer's office.

In the instant case, the title to the land involved has been confirmed in the State, and, therefore, it was proper for Shepherd, the owner, to pay the amount necessary to redeem, direct to the Commissioner of State Lands.

The primary question for our determination is as above indicated: Did the Commissioner of State Lands have authority to cancel the redemption deed issued to Shepherd because of the worthless checks given by Shepherd in payment for the deed? We think he had such authority.

Act 777 of the Acts of 1923 (now §§ 5562-5568, incl., Pope's Digest) authorizes certain State officers, including the Commissioner of State Lands, to accept personal checks when tendered in payment of designated obliga-

tions, (§ 5563) and that said checks shall be indorsed to the State Treasurer, by the head of the department receiving them. The State Treasurer is authorized to accept such checks for remittance due the State. The act further directs that in case any check is unpaid, the State Treasurer turn it over to the Attorney General for collection, after adding a 25 per cent. penalty. Section 7 of the act (§ 5568, Pope's Digest) provides: "Any State official issuing any certificate of authority or making any book entries affecting any transaction, payment for which was made with bad checks, as outlined above, is hereby authorized and directed to cancel such upon receipt of the Attorney General's notice of inability to collect on such checks as are mentioned in § 6 of this act." (Act 35 of the Acts of 1941 has no application here since it was passed subsequent to the facts upon which the present suit is based.)

We think the provisions of Act 777 gave to the Commissioner of State Lands authority to cancel the redemption deed in question here, if he has complied with its terms. Since we find no evidence here to the contrary, the presumption is that the Commissioner of State Lands has fully complied with the terms of the act and performed his duty according to law. In other words, when the contrary is not shown, the presumption is that the State's officer complied with the law.

In *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. 2d 779, this court said: "When any duty is required of a public officer, unless there is something to indicate the contrary, it will be presumed that he performed the duty according to law."

In *McCamey* v. *Wright,* 96 Ark. 477, 132 S. W. 223, this court quoted, with approval, from Throop on Public Officers, § 558, as follows: "The presumption is always in favor of the correct performance of his duty by an officer, and every reasonable intendment will be made in support of such presumption. So it will always be presumed that in any official act or act purporting to be official the officer has not exceeded his authority; and, if he had power to act only in a certain contingency, that the contingency has happened, etc."

And, in Mechum on Public Officers, at page 379, § 579, the textwriter said: "The law constantly presumes that public officers charged with the performance of official duty have not neglected the same, but have duly performed it at the proper time and in the proper manner. In the absence of evidence to the contrary, this presumption will prevail, but it is not an indisputable one and may be overcome by countervailing evidence. Where the rights of the public require it the presumption in favor of due performance is liberal, and the evidence to overthrow it must be clear."

We conclude, therefore, that the order of the Commissioner of State Lands of May 16, 1940, cancelling redemption deed No. 29472, issued to S. L. Shepherd, was in all respects valid, and the subsequent sale of the land to appellee on April 9, 1942, conveyed all title and interest of the State to appellee.

Accordingly, the decree is affirmed.