2009 Ark. App. 696

**Carlos HONEYSUCKLE, Appellant**

v.

**CURTIS H. STOUT, INC., Valley Forge Insurance Co., Death & Permanent Total Disability Trust Fund and Michael S. McCarthy, Appellees.**

**No. CA 08–1073.**

Court of Appeals of Arkansas.

Oct. 21, 2009.

McMath Woods, P.A., Little Rock, by: James Bruce McMath, for appellant.

Philip Hicky, II, Forrest City, for appellee.

KAREN R. BAKER, Judge.

This case arises from a jurisdictional dispute and the application of the exclusive remedy provisions of the Workers' Compensation Act, specifically, Arkansas Code Annotated § 11–9–105(a). The central issue is whether the employer's exclusive remedy, immunity from suit, extends to appellee, Michael S. McCarthy, to bar a wrongful death action filed in Pulaski County Circuit Court on behalf of appellant Carlos Honeysuckle, a deceased employee of Curtis H. Stout, Inc., which resulted from a plane crash wherein Honeysuckle was a passenger and McCarthy was the pilot. Appellant raises three questions in challenging the decision of the Workers' Compensation Commission: (1) Whether McCarthy was Honeysuckle's employer within the meaning of the Arkansas Workers' Compensation Act at the time of the incident in regard to the ac-

tions complained of; (2) Whether Arkansas Code Annotated § 11-9-105(a)₂ extends immunity, for injuries caused to a co-employee, to a "principal, officer, director, stockholder ..." without regard to whether such person is "acting in the capacity as an employer," with regard to the actions complained of; (3) Whether under Arkansas Code Annotated § 11-9-105(a) a "principal, officer, director, stockholder" is necessarily "acting in the capacity as an employer" with regard to the conduct causing an injury to a co-employee, simply by virtue of the injury occurring during the course and scope of employment. We reverse the Commission's determination that McCarthy was an employer under the Act at the time of the accident, which was the basis of the Commission's decision that it had exclusive jurisdiction of the matter and that the exclusive remedy applied.

The actions of McCarthy, for which Honeysuckle sought damages in the Pulaski County Circuit Court action, arise from Honeysuckle's claims that McCarthy failed to use reasonable care and skill in maintaining and operating the aircraft whose failure resulted in Honeysuckle's death. The failure of the aircraft occurred during the return flight from a business trip made by McCarthy and Honeysuckle on behalf of their employer, Curtis H. Stout, Inc. Curtis H. Stout, Inc., is an Arkansas corporation that sells electrical components to public utilities and private companies. It has places of business in multiple states. At all relevant times, McCarthy was an employee, president, member of the board of directors, and a major stockholder in Curtis H. Stout, Inc. Similarly, at all relevant times, Honeysuckle was an employee of Curtis H. Stout, Inc. Curtis H. Stout, Inc., was founded by McCarthy's grandfather.

McCarthy was an instrument-rated pilot and duly licensed to fly a Model 114A 4–place single engine Aero Commander aircraft that he owned. He used the aircraft from time to time as a means of transportation in connection with the business of Curtis H. Stout, Inc. At times prior to the accident in issue, McCarthy had carried employees of the company on business trips. McCarthy had used the aircraft in connection with Curtis H. Stout, Inc., on business trips on more than eighty (80) flights between June 2000 and October 2002. McCarthy's and Honeysuckle's jobs required each of them to travel. The company reimbursed each employee for his expenses related to his travel. When McCarthy used his aircraft in connection with business trips, the company reimbursed him on a cost of operation basis.

On December 5, 2002, Honeysuckle and McCarthy, after arriving at the offices of the company located in Little Rock, Arkansas, went to the Little Rock airport in McCarthy's car and boarded the aircraft owned by McCarthy. McCarthy piloted his aircraft, and Honeysuckle was a passenger. Upon arrival at the Addison, Texas, airport, they were picked up by a business associate of the company and went to a business meeting. At the conclusion of the meeting, they returned to the Addison airport where they boarded McCarthy's aircraft for the return trip to Little Rock. On the return trip, the aircraft experienced a loss of engine power and McCarthy attempted an emergency landing at Memorial Field in Hot Springs, Arkansas. Due to the loss of engine power, the aircraft crashed in a residential area approximately one mile southwest of the Hot Springs airport. Honeysuckle was fatally injured in the crash, and McCarthy was severely injured. Claims were filed on behalf of both McCarthy and the Administratrix of the Estate of Carlos Honeysuckle for workers' compensation before

the Arkansas Workers' Compensation Commission in connection with the accidental injuries they sustained as a result of the aircraft accident.

In the Arkansas Workers' Compensation Claim styled *Honeysuckle vs. Curtis H. Stout, Inc.*, Claim No. F214059, the Arkansas Workers' Compensation Commission entered an order wherein it was determined that an employment relationship existed between Carlos Honeysuckle and Curtis H. Stout, at all relevant times, including December 5, 2002, and that Carlos Honeysuckle, an employee, sustained accidental and fatal injuries in the aircraft accident arising out of and in the course and scope of his employment with Curtis H. Stout, Inc., thus determining there was a "compensable injury" under the Arkansas Workers' Compensation Act. The claimant and those whom she represents received workers' compensation benefits in excess of $85,000 in connection with the aircraft accident.

In the Arkansas Workers' Compensation Claim styled *Michael McCarthy vs. Curtis H. Stout, Inc.*, Claim No. F213993, the Arkansas Workers' Compensation Commission entered an order wherein it was determined that an employment relationship existed between Michael McCarthy and Curtis H. Stout, at all relevant times, including December 5, 2002, and that Michael McCarthy sustained accidental injuries in the aircraft accident arising out of and in the course and scope of his employment with Curtis H. Stout, Inc., thus determining there was a "compensable injury" under the Arkansas Workers' Compensation Act. McCarthy received workers' compensation benefits in excess of $300,000 in connection with the aircraft accident.

After a claim for workers' compensation benefits had been filed, Janan Honeysuckle, as Administratrix of the Estate of Carlos Honeysuckle, filed a wrongful-death cause of action in the Pulaski County Circuit Court against McCarthy and the manufacturer of the aircraft, as well as the manufacturers of certain component parts of the aircraft, alleging negligence against McCarthy, as well as other theories of recovery against other defendants. McCarthy filed a Petition for a Writ of Prohibition in the Arkansas Supreme Court requesting that the court issue a writ of prohibition prohibiting the Pulaski County Circuit Court from proceeding in the cause of action based on lack of subject-matter jurisdiction. The supreme court granted the writ and remanded the matter to the Workers' Compensation Commission for a determination of whether McCarthy was an employer under the Act.

The Commission found that McCarthy was the employer of Honeysuckle and entitled to immunity under Arkansas Code Annotated § 11–9–105 and further entitled to immunity from a third-party action under Arkansas Code Annotated § 11–9–410. This appeal followed.

The parties' arguments concern the interpretation and application of Arkansas Code Annotated § 11–9–105. The question of the correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo. *Hempstead Cnty. Hunting Club, Inc. v. Ark. Pub. Serv. Comm'n*, 2009 Ark.App. 511, 324 S.W.3d 697; *Cooper Realty Inv., Inc. v. Ark. Contractors Licensing Bd.*, 355 Ark. 156, 134 S.W.3d 1 (2003); *see also Baker Refrigeration Sys., Inc. v. Weiss*, 360 Ark. 388, 201 S.W.3d 900 (2005). When examining an issue of statutory construction, our cardinal rule is to give effect to the intent of the legislature. *Ark. Gas Consumers, Inc. v. Ark. Pub. Serv. Comm'n*, 354 Ark. 37, 49, 118 S.W.3d 109, 118 (2003). Where the language of a stat-

ute is clear and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *McMickle v. Griffin*, 369 Ark. 318, 323, 254 S.W.3d 729, 735 (2007). The statute should be construed so that no word is left void, superfluous, or insignificant; and meaning and effect must be given to every word in the statute if possible. *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 338–39, 969 S.W.2d 190, 191–92 (1998).

The Arkansas Workers' Compensation Act, along with its exclusive remedy provision, is made possible by virtue of amendment 26 to the Constitution of the State of Arkansas. This amendment, set forth in article 5, section 32, of the Arkansas Constitution provides that

> [t]he General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise *no law shall be enacted limiting the amount to be recovered for injuries* resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted.

Ark. Const. art. 5, § 32, *amended by* Ark. Const. amend. 26 (emphasis added).

 Therefore, it is equally important that we bear in mind the principle of statutory construction that requires that we interpret a statute to be constitutionally sound if such an interpretation can be made. *See Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007). As our supreme court has explained:

It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality; every act carries a strong presumption of constitutionality, and before an act will be held un-constitutional, the incompatibility between it and the constitution must be clear. *Eady v. Lansford*, [351 Ark. 249, 92 S.W.3d 57 (2002)]. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality. *Id.* The heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.*

*Summerville v. Thrower*, 369 Ark. at 235–36, 253 S.W.3d at 418 (2007) (quoting *Whorton v. Dixon*, 363 Ark. 330, 336, 214 S.W.3d 225, 230 (2005)).

The exclusive-remedy provision of the Act is found at Ark.Code Ann. § 11–9–105, and states in part:

> The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer, or any principal, officer, director, stockholder, or partner acting in his capacity as an employer, or prime contractor of the employer, on account of the injury or death, and the negligent acts of a co-employee shall not be imputed to the employer. No role, capacity, or persona of any employer, principal, officer, director, or stockholder other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this chapter, and the remedies and rights provided by this chapter shall in fact be exclusive regardless of the multiple roles, capacities, or

personas the employer may be deemed to have.

Ark.Code Ann. § 11–9–105(a) (Repl.2002).

This provision clearly indicates that any claim for injury or death against an employer may only be brought under the Act, thus eliminating an employer's tort liability. According to the Act, an employee's remedy against his employer for injuries sustained on the job is to file a workers' compensation claim, and this remedy is exclusive as to the employer, as stated in the statute, and has only been extended by this court to the employer's workers' compensation insurance carrier. *Cherry v. Tanda*, 327 Ark. 600, 940 S.W.2d 457 (1997). The exclusivity provision of the Act mirrors the general purpose of the Act, which was to change the common law by shifting the burden of all work-related injuries from employers and employees and placing it on the consuming public, thus eliminating any need to prove fault. *Brown v. Finney*, 326 Ark. 691, 932 S.W.2d 769 (1996).

As our supreme court has explained, the public ultimately bears the cost of our structure for workers' compensation:

> [T]he entire compensation system has been set up and paid for, not by the parties, but by the public. The public has ultimately borne the cost of compensation protection in the price of the product.... The public interest is also thwarted when the employer and employee agree to a settlement which unnecessarily increases the cost of the product by giving the worker more than is due.

*Vanderpool v. Fid. & Cas. Ins. Co.*, 327 Ark. 407, 415, 939 S.W.2d 280, 285 (1997) (quoting 3 Arthur Larson, *Workmen's Compensation Law* § 82.41 (1988)).

With these principles in mind, we review the Commission's decision finding that the Commission had exclusive jurisdiction by virtue of McCarthy's status as Honeysuckle's employer and applying the statutory immunity. In this case, our supreme court issued an order granting McCarthy's petition for a writ of prohibition stating that the Commission had exclusive, original jurisdiction to determine whether McCarthy was an employer under the Act at the time of the accident. *McCarthy v. Pulaski Cnty. Circuit Court*, 366 Ark. 316, 235 S.W.3d 497 (2006). The Commission held that McCarthy was the employer of Honeysuckle and entitled to immunity under Arkansas Code Annotated § 11–9–105 and further stated that, even if he were not the employer, he would be entitled to immunity from a third-party action pursuant to Arkansas Code Annotated § 11–9–410 because he was carrying out the employer's duty to provide a safe workplace. The Commission reasoned that since McCarthy undertook to provide the transportation in this case, and since both McCarthy and Honeysuckle were acting in the course and scope of their employment, immunity was extended to McCarthy. The Commission found that because the accident occurred during the course of the employment of both McCarthy and Honeysuckle, it was reasonable to conclude that the "workplace" was in the aircraft at the time of the accident and that McCarthy was carrying out Curtis H. Stout, Inc.'s duty to provide a safe place to work.

This reasoning is flawed in two regards. First, duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *Tackett v. Merchant's Sec. Patrol*, 73 Ark.App. 358, 362, 44 S.W.3d 349, 352 (2001). Ordinarily, a person is under no duty to control the actions of another person, even though he has the practical ability to do so. *Id.* One is not liable for the acts of another person unless a special relationship exists between

the two. *Id.* The question of what duty is owed to the plaintiff is always one of law, and, while the question of what duty is owed is one of law, the determination of the nature of the relationships arises from the facts. *Id.*

■ Recognition of the relationships between individuals in the employment context has shaped the application of our workers' compensation laws and exclusive-remedy provisions. When an employee is acting as the alter ego of the employer in discharging the employer's duty to provide a safe place to work, the employee shares the employer's immunity. *See Simmons First Nat'l Bank v. Thompson,* 285 Ark. 275, 686 S.W.2d 415 (1985). This immunity protects the supervisory employees when their general duties involve the overseeing and discharging of the duty to provide a safe place to work. *Id.* To impose personal liability upon the officers or supervisory personnel "for an accident arising from a condition at a place of employment which a jury may find to be unsafe would almost mandate that the employer provide indemnity to such employees." *Simmons,* 285 Ark. at 278, 686 S.W.2d at 417 (quoting *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175 (Mo.Ct. App.1982)). Indemnity would further increase the costs of the goods and therefore increase the burden upon the public. Accordingly, imposing personal liability upon supervisory employees for causes of action arising out of actions performed in their employment-services capacities would destroy the immunity provisions of the workers' compensation law. *See Simmons, supra.*

■ Second, although the parties stipulated that McCarthy and Honeysuckle were each performing employment services at the time of the accident, it is undisputed that the plane McCarthy was flying was his privately owned plane, insured by McCarthy personally, and that the means of travel was a personal decision made by McCarthy and Honeysuckle individually. Curtis Stout, Inc., did not require Honeysuckle to travel with McCarthy on the plane to, or from, the meeting. Whether an employer requires an employee to do something has been dispositive of whether the activity constituted employment services. *Witt v. Allen & Son, Inc.,* 2009 Ark.App. 561, 2009 WL 2778031. For an accidental injury to be compensable, it must arise out of and in the course of employment. Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2007). A compensable injury does not include an injury that was inflicted upon the employee at a time when employment services were not being performed. Ark.Code Ann. § 11–9–102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Dairy Farmers of Am., Inc. v. Coker,* 98 Ark.App. 400, 255 S.W.3d 905 (2007). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Pifer v. Single Source Transportation,* 347 Ark. 851, 69 S.W.3d 1 (2002). The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Id. See Parker v. Comcast Cable Corp.,* 100 Ark.App. 400, 269 S.W.3d 391 (2007). Whatever "employment services" means must be determined within the context of individual cases, employments, and working relationships, not generalizations made devoid of practical working conditions. *Engle v. Thompson Murray, Inc.,* 96 Ark.App. 200, 239 S.W.3d 561 (2006).

In this case, the employer required both McCarthy and Honeysuckle to travel to and from Texas to go to the meeting. The parties stipulated that the injuries occurred in the scope of employment. However, while the requirement to travel to the meeting was mandatory, and thus within the scope of employment, the specific means of travel was completely discretionary on behalf of each employee. Curtis Stout, Inc., did not require Honeysuckle to travel with McCarthy. Nor did it require McCarthy to provide transportation in his plane to Honeysuckle. The parties agreed that any means or mode of transportation would have been satisfactory for the employee to fulfill his obligation to attend the meeting. While traveling to the meeting advanced the employer's interest, the specific means of travel did not.

Nothing in our case law suggests that an employee can act as an alter ego of his employer merely by undertaking a duty that is owed by the employer. To the contrary, general principles of agency contradict that proposition. The burden of proving an agency relationship lies with the party asserting its existence. *B.J. McAdams, Inc. v. Best Refrigerated Express, Inc.*, 265 Ark. 519, 579 S.W.2d 608 (1979). Our supreme court has used different definitions of agency, but each of them includes the element of control by the principal. In *Evans v. White*, 284 Ark. 376, 682 S.W.2d 733 (1985) and *Campbell v. Bastian*, 236 Ark. 205, 365 S.W.2d 249 (1963), our supreme court adopted the definition of agency contained in the Restatement (Second) of Agency. It said "the two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control." In *Hinson v. Culberson–Stowers Chevrolet, Inc.*, 244 Ark. 853, 427 S.W.2d 539 (1968), the supreme court examined the Restatement definition together with a quote from 2 Am.Jur. 13, *Agency* § 2 and concluded that "the essential elements for a showing of the agency relationship were authorization and control." *Taylor v. Gill*, 326 Ark. 1040, 934 S.W.2d 919 (1996) (quoting *Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994)). *See Newberry v. Scruggs*, 336 Ark. 570, 986 S.W.2d 853 (1999).

On appeal, McCarthy argues that he is entitled to immunity under the statute as a principal, officer, director, and stockholder, in view of the fact that he was acting within the course and scope of his employment and acting in his capacity as an employer at the time of the occurrence in issue. He further contends that he was a co-employee acting within the course and scope of his employment at the time of the accident and entitled to immunity because he was carrying out the duty of the employer to provide a safe place to work. He claims he was providing a safe place to work by transporting Honeysuckle, an employee who was within the course and scope of his employment in connection with a business meeting of Curtis H. Stout, Inc.

McCarthy disputes appellant's position that the phrase "acting in his capacity as an employer" applies to principals, officers, directors, and stockholders. Instead, he proposes that the phrase applies only to partners, and the Arkansas Workers' Compensation Commission agreed. On appeal, McCarthy maintains that the only relationship issue for the court to consider when determining the applicability of the immunity provision is the relationship between the tortfeasor and the employer. The limitations of this position become apparent when we consider whether the employer would be liable for Honeysuckle's injuries if the parties had been traveling in

separate airplanes and McCarthy's alleged negligence had caused a crash. McCarthy's proposed construction would place the burden of the injury on the employer for the harm to Honeysuckle, for which the public bears the burden, while the harm to every other injured person would be borne by McCarthy.

McCarthy argues that, to the extent that Honeysuckle attempts to directly or indirectly raise an issue relative to the constitutionality of Arkansas Code Annotated § 11–9–105(a), the constitutionality of the section is not properly before this court. However, it is McCarthy's interpretation of the statute that would require us to unconstitutionally extend the immunity provisions of the Act.

The employer in this case, Curtis H. Stout, Inc., directed both McCarthy and Honeysuckle to travel to the meeting in Texas. Each employee was within the scope of his employment during the travel. However, the employer did not direct or control the means of travel, and more specifically, did not control or direct McCarthy in maintaining and operating the aircraft with reasonable care and skill. The actions of McCarthy for which Honeysuckle seeks damages arise from McCarthy's failure to use reasonable care and skill in maintaining and operating the aircraft whose failure resulted in Honeysuckle's death.

Reversed.

ROBBINS and MARSHALL, JJ., agree.